IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

VRWC, L.L.C., )
)
         Plaintiff, )
)
v. ) Case No. 09-2268-JWL
)
AUMD, L.L.C., et al., )
)
         Defendants. )
)
_____)

**MEMORANDUM AND ORDER**

This diversity action is presently before the Court on the motion by defendants TecniCard, Inc. ("TecniCard") and Marcio Baltodano (collectively, "movants") to dismiss the complaint by plaintiff VRWC, L.L.C. for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) (Doc. # 5). For the reasons set forth below, the Court **grants** the motion to dismiss, but grants plaintiff leave to amend its complaint by **October 29, 2009**, to cure its deficiencies in asserting jurisdiction over movants.

### I.    **Personal Jurisdiction Standards**

Although a plaintiff bears the burden of establishing personal jurisdiction over the defendant, *see OMI Holdings, Inc. v. Royal Ins. Co.,* 149 F.3d 1086, 1091 (10th Cir. 1998), in the preliminary stages of litigation this burden is "light." *Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000) (quoting *Wenz v.*

*Memery Crystal,* 55 F.3d 1503, 1505 (10th Cir.1995)). Where, as here, there has been no evidentiary hearing, and the motion to dismiss for lack of personal jurisdiction "is decided on the basis of affidavits and other written material, the plaintiff need only make a prima facie showing that jurisdiction exists." *See id.* The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. *Id.* Moreover, if the parties present conflicting affidavits, "all factual disputes must be resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Id.* Only the well pled facts of plaintiff's complaint, however, as distinguished from mere conclusory allegations, must be accepted as true. *Id.* In addition, an affidavit submitted by a party must comply with the requirements of Fed. R. Civ. P. 56(e), i.e., it must be based on personal knowledge, set forth admissible facts, and show affirmatively that the affiant is competent to testify to the matters stated therein. *See FDIC v. Oaklawn Apts.*, 959 F.2d 170, 175 n.6 (10th Cir. 1992).

To obtain personal jurisdiction over a nonresident defendant in a diversity action, "a plaintiff must show both that jurisdiction is proper under the laws of the forum state and that the exercise of jurisdiction would not offend due process." *Intercon, Inc.*, 205 F.3d at 1247. Because Kansas's long-arm statute permits the exercise of any jurisdiction that is consistent with the United States Constitution, the personal jurisdiction inquiry under Kansas law collapses into the single due process inquiry. *See OMI Holdings, Inc.*, 149 F.3d at 1090.

The Due Process Clause permits the exercise of personal jurisdiction over a nonresident defendant so long as the defendant purposefully established "minimum contacts" with the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985); *accord Intercon, Inc.*, 205 F.3d at 1247 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)). This standard may be met in two ways. First, a court may exercise specific jurisdiction if a defendant has "purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Intercon*, 205 F.3d at 1247 (quoting *Burger King Corp.*, 471 U.S. at 472); *accord Doering v. Copper Mountain, Inc.*, 259 F.3d 1202, 1210 (10th Cir. 2001). Second, a court may exercise general jurisdiction if the defendant's contacts with the forum state, while unrelated to the alleged activities upon which the claims are based, are nonetheless "continuous and systematic." *Intercon*, 205 F.3d at 1247 ("When a plaintiff's cause of action does not arise directly from a defendant's forum-related activities, the court may nonetheless maintain general personal jurisdiction over the defendant based on the defendant's business contacts with the forum state."); *accord Doering*, 259 F.3d at 1210.

Even if a defendant's actions created sufficient minimum contacts, the court must still consider whether the exercise of personal jurisdiction "would offend traditional notions of 'fair play and substantial justice.'" *Intercon*, 205 F.3d at 1247 (quoting *Burger King Corp.*, 471 U.S. at 476). This inquiry requires a determination of whether the "exercise of personal jurisdiction over [the] defendant is reasonable in light of the

3

circumstances surrounding the case." *Id.* (citing *Burger King Corp.*, 471 U.S. at 477-78).

**II. Analysis**

*A. Plaintiff's Allegations*

On May 20, 2009, plaintiff filed its complaint alleging claims against defendants AUMD, L.L.C. ("AUMD"), a California limited liability company; CardMarte, Inc. ("CardMarte"), a California corporation; Alfred Urcuyo, a California resident alleged to have been an officer and director of AUMD and the Chairman and CEO of CardMarte; Max Day, a California resident alleged to have been President of CardMarte; Alfons Ciolek, a California resident alleged to have an ownership interest in AUMD and CardMarte; movant TecniCard, a Florida corporation alleged to have purchased CardMarte; and movant Marcio Baltodano, a Florida resident alleged to have been an officer and director of CardMarte, TecniCard, and unnamed related entities.[1] Plaintiff alleges in the complaint that it is a Nevada limited liability company that is authorized to do business in Kansas. The complaint does not identify plaintiff's members, the states of which the members are residents, or the location of plaintiff's principal place of business.

In the complaint, plaintiff lists a number of false representations allegedly made

---

[1] It appears that, at this time, movants are the only defendants that have been successfully served with process.

by "defendants" to induce plaintiff to pay $300,000 for a 50-percent ownership in defendant AUMD. Plaintiff does not state the type of business conducted by itself, AUMD, or the other parties, but it appears that plaintiff understood that AUMD sold banking or credit cards and that defendant CardMarte would market and sell AUMD's products. The alleged misrepresentations related to AUMD's programs, sales, growth, and profitability, and to CardMarte's products, programs, and relationships with distributors. Plaintiff alleges that the representations "were made via the AUMD Executed Operating Agreement and power point presentations sent via electronic mail, as well as other electronic mail and regular mail correspondence and communications sent to Plaintiff in the State of Kansas." Plaintiff further alleges that, in reliance on the alleged misrepresentations, it paid $300,000 to an AUMD account on October 2, 2007, and that in October, November, and December 2007, defendant Al Urcuyo transferred nearly all of that payment to CardMarte's accounts. Plaintiff alleges that CardMarte, TecniCard, and Mssrs. Urcuyo, Ciolek, Day, and Baltodano all benefitted from those transfers.

Based on the alleged misrepresentations, plaintiff asserts the following state-law causes of actions against all defendants: violations of Kansas securities laws; fraudulent inducement; intentional misrepresentation; negligent misrepresentation; and civil conspiracy. In support of its conspiracy claim, plaintiff alleges that the seven defendants "acted together and had a meeting of the minds with regard to making false representations to induce Plaintiff to pay $300,000 to AUMD." Plaintiff also alleges that

5

the seven defendants "were all members of a joint venture, each were [sic] acting as a member of a joint venture, and each member acted as both principal and agent of the other members." With respect to the Court's jurisdiction, plaintiff alleges as follows: "This Court has personal jurisdiction over each Defendant because each Defendant, and/or other members of the joint venture acting as principal or agent of that Defendant, has committed tortious acts in Kansas that have caused injury to Plaintiff within the State of Kansas."

Plaintiff has not alleged or argued that any of the defendants had the kind of continuous and systematic contacts with the State of Kansas that would support general jurisdiction. Rather, plaintiff asserts that defendants' contacts with Kansas relating to its transaction with AUMD give rise to specific jurisdiction over defendants. In support of jurisdiction over movants TecniCard and Mr. Baltodano, plaintiff appears to argue that these two defendants had sufficient contacts with Kansas themselves and, alternatively, that their alleged co-conspirators' contacts with Kansas may be attributed to them for purposes of jurisdiction. Thus, the Court first examines movants' own contacts with Kansas and then considers whether it may exercise jurisdiction over movants under a conspiracy theory.

### B. *Jurisdiction Based on Movants' Contacts*

In support of the motion to dismiss, TecniCard has submitted a declaration by its general manager stating that TecniCard has not had any connection or contact with the State of Kansas, that TecniCard has not transacted any business with plaintiff or AUMD,

6

that none of its employees or agents made any of the alleged representations to plaintiff, and that it never entered into any agreement with anyone to induce plaintiff to invest in AUMD. Mr. Baltodano has also submitted a declaration denying contacts with Kansas and participation in any such agreement. In response, plaintiff has submitted its own affidavit, in which its president generally echoes the allegations of the complaint. In its complaint and affidavit, plaintiff alleges certain conduct by movants that it argues supports personal jurisdiction in this case. The Court addresses each such allegation in turn.

1. <u>The Purchase of CardMarte.</u> The complaint's only allegation of specific conduct by TecniCard (as opposed to the actions of defendants generally) is that TecniCard purchased CardMarte. Movants' declarations deny that TecniCard purchased CardMarte; they assert instead that Mr. Baltodano is a member of an LLC that purchased CardMarte in January 2008—after plaintiff allegedly lost its money. In its own affidavit in response, plaintiff states that Mr. Baltodano purchased CardMarte after the subject transaction.

Thus, it appears that plaintiff has abandoned its allegation that TecniCard purchased CardMarte. TecniCard and CardMarte are alleged to have shared an officer and director in Mr. Baltodano, but that fact does not mean that either movant had contact with Kansas in connection with CardMarte's activities or plaintiff's transaction. No other basis for TecniCard's inclusion in this lawsuit has been alleged. The Court concludes that these allegations concerning TecniCard do not support jurisdiction over

7

that defendant.

Plaintiff states in its affidavit that Mr. Baltodano purchased CardMarte, despite Mr. Baltodano's insistence that the purchase was made by another entity. The affiant has not given any details concerning that purchase, however; nor has he disclosed any basis for his personal knowledge of the identity of the actual purchaser. Accordingly, the Court cannot say that plaintiff has sufficiently controverted Mr. Baltodano's own declaration such that plaintiff's affidavit should be accepted as fact at this stage. *See FDIC v. Oaklawn Apts.*, 959 F.2d at 175 n.6 (affidavit in this context must be based on personal knowledge and affirmatively show that affiant is competent to testify to such matters); *see also Told v. Tig Premier Ins. Co.*, 149 Fed. App'x 722, 725-26 (10th Cir. 2005) (lack of particularity and detail suggested that affidavit was not based on personal knowledge); *Campbell v. Bank of Am.*, 404 F. Supp. 2d 1292, 1304 n.5 (D. Kan. 2005) (court not persuaded that verified complaint's allegations were sufficient to support jurisdiction; some allegations did not appear to be based on the personal knowledge of the person verifying the complaint).

Moreover, plaintiff concedes that the purchase took place after the subject transaction, and plaintiff has not explained how the mere purchase of CardMarte after the fact could constitute a contact with the State of Kansas relating to plaintiff's claims sufficient to support jurisdiction. The Court rejects plaintiff's allegations relating to the purchase of CardMarte and the sharing of an officer as bases for personal jurisdiction over movants.

2. <u>Alleged Misrepresentations by All Defendants.</u>  Plaintiff has asserted, in both its complaint and supporting affidavit, that "defendants" generally made the alleged misrepresentations into Kansas.  Plaintiff's affidavit also states, however, that Mr. Baltodano was aware of the alleged misrepresentations and plaintiff's reliance on them.  Moreover, it appears from the complaint and the affidavit that TecniCard's only connection with plaintiff's claims is through Mr. Baltodano.  Accordingly, a reasonable reading of the entire complaint and affidavit suggests that movants were not among those parties who actually made the alleged misrepresentations to plaintiff, and that movants' connection to this case arises only as alleged conspirators or joint venturers who should be held responsible for the other defendants' actions.  Accordingly, the Court concludes that plaintiff's repeated allegation that "defendants" generally made the alleged misrepresentations does not controvert movants' specific denials of any participation in such representations, and jurisdiction over movants may not rest on this allegation by plaintiff.[2]

---

[2]The Court notes that plaintiff's allegations of various misrepresentations do not satisfy the particularity requirement of Fed. R. Civ. P. 9(b), as they do not identify by whom, to whom, or when the representations were made.  *See, e.g.*, *Koch v. Koch Indus.*, 203 F.3d 1202, 1236 (10th Cir. 2000).  Thus, the Court is unable to assume that movants made any particular representations into Kansas for purposing of considering the issue of personal jurisdiction.  Moreover, plaintiff's bare allegations that "defendants" generally made the misrepresentations, without further detail and in light of plaintiff's separate assertion that Mr. Baltodano was merely aware of the misrepresentations, are deficient under the Supreme Court's pleading standards set forth in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), that require plausibility, as discussed below.  *See infra* Part II.C.

3.      <u>Allegation That All Defendants Benefitted.</u>      Plaintiff asserts in its complaint and affidavit that all of the defendants benefitted from the transaction involving plaintiff, presumably based on the allegation that plaintiff's payment was transferred to CardMarte's accounts.  First, the Court notes that the allegation that movants benefitted somehow from the alleged misrepresentations is conclusory, with no supporting details or any basis for the affiant's personal knowledge of this alleged fact. Plaintiff's bare allegation is undermined by its initial mistaken allegation that TecniCard purchased Cardmarte and its later unsupported statement that Mr. Baltodano was the purchaser (despite Mr. Baltodano's specific identification of the actual purchaser). Regardless, even if movants did somehow benefit from the alleged torts against plaintiff, that fact does not, by itself, provide a basis for liability, let alone constitute sufficient contact with the state in which the torts allegedly took place.  Plaintiff has not provided any authority to support the proposition that a defendant has purposefully directed activities into a state if he benefits from the commission of a tort in that state (absent participation in a conspiracy, which is addressed below).  Accordingly, the Court rejects this basis for jurisdiction.

4.      <u>Mr. Baltodano's Knowledge of the Representations.</u>      The Court also rejects Mr. Baltodano's alleged knowledge of the representations and plaintiff's reliance on them as a basis for specific jurisdiction (separate from jurisdiction under a conspiracy theory).  Again, without a basis for the affiant's personal knowledge or facts supporting such an allegation, the Court cannot conclude that plaintiff's bare assertion in its

affidavit controverts Mr. Baltodano's own sworn statement to the contrary. Moreover, even if plaintiff's assertion were accepted, plaintiff has not explained how such knowledge by Mr. Baltodano, in and of itself, absent participation in a conspiracy, gives rise to liability or constitutes a contact by Mr. Baltodano with the State of Kansas. Thus, the Court concludes that this allegation by plaintiff does not support jurisdiction over movants.

5. <u>E-Mails Copied to Mr. Baltodano.</u> Plaintiff's affidavit states that Mr. Baltodano "was copied on email correspondence regarding the subject transaction." The affidavit does not indicate whether those e-mails preceded the allegedly tortious activity, however, or provide any other basis to connect those e-mails to plaintiff's claims. More importantly, plaintiff has not explained how others' decisions to copy Mr. Baltodano on e-mails, absent a conspiracy or any communication by him, constitutes conduct by Mr. Baltodano purposefully directed at the State of Kansas. The Court rejects this basis for jurisdiction over movants.

6. <u>Mr. Baltodano's Single Telephone Call with Plaintiff's President.</u> Plaintiff's affidavit states that Mr. Baltodano participated in at least one telephone call regarding the subject transaction with the affiant in Kansas, but it does not identify when that conversation took place. Mr. Baltodano's declaration states that any contact with persons associated with plaintiff took place well after the transaction allegedly occurred in 2007, and plaintiff has not offered evidence to dispute that timeline. Accordingly, the Court concludes that a single telephone call well after the transaction does not constitute

11

sufficient contact with Kansas to support jurisdiction.

7.   <u>Unrelated Visits by Mr. Baltodano to Kansas.</u>  Finally, plaintiff's affidavit states that Mr. Baltodano has traveled and does travel to meetings in Kansas relating to his interest in a company that is not a party to this suit. Mr. Baltodano disputes that he has ever attended such a meeting, and plaintiff's affiant does not provide any basis for his personal knowledge of such attendance. Regardless, because plaintiff concedes in the affidavit that any such visits related to a non-party, the visits cannot support specific jurisdiction in this case. Nor has plaintiff established or alleged continuous and systematic contacts with Kansas that would support general jurisdiction over Mr. Baltodano. Accordingly, this allegation does not support jurisdiction over movants.

8.   <u>Summary and Leave to Amend.</u>   In summary, apart from the allegation that movants' participated in a conspiracy (addressed below), and absent any specific allegation that movants actually made misrepresentations to it, plaintiff has not shown that movants had minimum contacts with the State of Kansas necessary to support the Court's exercise of personal jurisdiction over them. The Court will grant plaintiff leave to amend its complaint, however, to allege any specific misrepresentations actually made by these defendants (and not merely their involvement in a conspiracy that included making the alleged misrepresentations), in an attempt to support personal jurisdiction over them. If plaintiff does in fact allege such misrepresentations, plaintiff shall file its amended complaint on or before October 29, 2009.

### C.   *Jurisdiction Based on a Conspiracy Theory*

Plaintiff also asserts jurisdiction over movants based on the actions of their alleged co-conspirators. "The existence of a conspiracy and acts of a co-conspirator within the forum may, in some cases, subject another co-conspirator to the forum's jurisdiction." *Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1069 (10th Cir. 2007). Plaintiff must do more than just make the allegation of a conspiracy, however. "In order for personal jurisdiction based on a conspiracy theory to exist, the plaintiff must offer more than 'bare allegations' that a conspiracy existed, and must allege facts that would support a prima facie showing of a conspiracy." *Id.*; *accord American Land Program, Inc. v. Bonaventura Uitgevers Maatschappij, N.V.*, 710 F.2d 1449, 1454 (10th Cir. 1983) (quoting *Baldridge v. McPike, Inc.*, 466 F.2d 65, 68 (10th Cir. 1972)); *see also Ten Mile Indus. Park v. Western Plains Serv. Corp.*, 810 F.2d 1518, 1524 (10th Cir. 1987) (in support of jurisdiction, only well-pled facts, as distinguished from mere conclusory allegations, must be accepted as true).

In addition, the Supreme Court recently confirmed that merely conclusory allegations are not entitled to the presumption of truth at the pleading stage and are not sufficient to state a claim for relief; rather, the plaintiff must plead facts in sufficient detail to establish a plausible right to relief. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007)). Applying these standards in the context of an antitrust claim, the Supreme Court held that a plaintiff may not merely allege the existence of a conspiracy, but must plead sufficient factual matter to suggest that an agreement was actually made. *See Twombly*,

13

550 U.S. at 556-57. There is no reason to believe that these same standards should not also govern a plaintiff's allegations in support of jurisdiction. *See, e.g.*, *Watkins v. Kajima Int'l*, 2009 WL 3053856, at *6 (M.D. Tenn. Sept. 18, 2009) (pleading deficient under *Twombly* did not provide minimum contacts necessary to support the assertion of personal jurisdiction). Similarly, the Court concludes that a plaintiff should not be permitted to overcome a deficient pleading and support jurisdiction with an affidavit containing merely conclusory allegations devoid of factual support.

In this case, plaintiff alleges that the various defendants made misrepresentations into Kansas to induce it to enter into a certain transaction, apparently while plaintiff was located in Kansas (although the complaint does not identify plaintiff's principal place of business or plaintiff's members). If movants indeed participated in a conspiracy to induce the transaction by means of misrepresentations directed to plaintiff in Kansas, then the exercise of jurisdiction over movants might be warranted. Plaintiff must provide specific facts, however, that show that such a conspiracy existed and that movants participated in that conspiracy. Instead, in its complaint, plaintiff has merely proffered conclusory allegations that all of the defendants reached a meeting of the minds and entered into a joint venture and a conspiracy. Then, in response to movants' sworn declarations denying any such agreement, plaintiff has provided an affidavit that merely repeats its bare allegation of a conspiracy, without any factual support or any basis for the affiant's personal knowledge concerning that allegation. Such allegations are clearly insufficient, either under the *Twombly* standard or under the long-standing

14

Tenth Circuit law requiring a fact-based prima facie case, and not mere conclusions, to support personal jurisdiction over a defendant. *See, e.g.*, *Campbell v. Bank of Am.*, 404 F. Supp. 2d at 1304 n.5) (court not persuaded that verified complaint's allegations made out a prima facie case of conspiracy sufficient to support personal jurisdiction; some allegations did not appear to be based on personal knowledge of the person verifying the complaint).

Accordingly, plaintiff has not met its burden to establish the Court's personal jurisdiction over movants, either based on movants' own conduct or under a conspiracy theory. It is not clear, however, that plaintiff could not support its conspiracy theory with sufficient factual allegations and proof. Therefore, if plaintiff does in fact have sufficient factual evidence to support jurisdiction under a conspiracy theory, it may file an amended complaint containing such factual allegations on or before October 29, 2009. If plaintiff does not file an amended complaint as set forth herein by that date, the Court shall dismiss plaintiff's claims against these defendants.

IT IS THEREFORE ORDERED BY THE COURT THAT the motion by defendants TecniCard, Inc. and Marcio Baltodano to dismiss the complaint for lack of personal jurisdiction (Doc. # 5) is **granted**. Plaintiff is granted leave to file an amended complaint by **October 29, 2009**, to attempt to assert jurisdiction over these defendants. If plaintiff does not file an amended complaint asserting claims against these defendants by that date, the claims against these defendants shall be dismissed.

IT IS SO ORDERED.

Dated this 15th day of October, 2009, in Kansas City, Kansas.

                                              s/ John W. Lungstrum
                                              John W. Lungstrum
                                              United States District Judge